Argued January 21, reversed and remanded February 19,
reconsideration denied March 27, petition for
review denied May 29, 1974

BRENNAN, *Respondent, v.* STATE ACCIDENT
INSURANCE FUND (No. 388-220),
*Appellant.*
518 P2d 1346

· Jim G. Russell; Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Nels Peterson, Portland, argued the cause for respondent. With him on the brief were Peterson, Chaivoe & Peterson, Portland.

Before SCHWAB, Chief Judge, and FOLEY and TANZER, Judges.

FOLEY, J.

In this workmen's compensation case the hearing officer and the Workmen's Compensation Board found that claimant had failed to prove a permanent disability arising from compensable injury which involved the breathing of toxic fumes while at work on December 26, 1969. The circuit court reversed and awarded claimant permanent total disability. The Fund appeals.

This claim was in process an unusually long time. Claimant filed a request for hearing on November 12, 1970. A hearing was held on March 12, 1971. This hearing was adjourned to a later date for medical testimony and the testimony of three doctors was taken before the hearing officer on June 17, 1971. The hearing officer filed his opinion and order on August 3, 1971, in which he found that claimant had failed to sustain the burden of proving a permanent disability arising out of his compensable injury of December 26, 1969. Upon review the Board affirmed the hearing officer and on appeal to the circuit court that court, on April 18, 1972, remanded to the hearing officer for consideration of further evidence. As the basis for remand the court found.

"* * * that the nature and extent of injuries to

> claimant may only be determined by further evidence, due to an increase of scientific knowledge as to the effects upon human beings of toxic chemicals, and changes in lung function of claimant since the hearing upon this cause."

Additional medical evidence was then received by the hearing officer in a hearing on July 6, 1972, pursuant to the remand. The hearing officer affirmed his earlier determination order which was that there was failure of proof of compensable permanent injury. The Board affirmed and claimant again appealed to the circuit court. That court then reversed the hearing officer and the Board and awarded permanent total disability.

■■ In our de novo review we have concluded that the remand by the circuit court for the taking of further evidence was improper because no good cause for remand was shown. For that reason the evidence taken at that hearing will not be considered.[1]

> "* * * Remand should not be granted when the hearing officer has ruled against a claimant and it appears the claimant merely wishes to strengthen his case by presenting new evidence, which with due diligence could have been produced at the original hearing." *Buster v. Chase Bag Co.*, 14 Or App 323, 329-30, 513 P2d 504 (1973).

The remand order recited that (1) there had been an increase in scientific knowledge as to the effects upon human beings of toxic chemicals and (2) there had been changes in lung function of claimant since the hearing. This latter would properly be dealt with under a claim of aggravation pursuant to ORS 656.271, not under the remand machinery. No change in medical knowledge about toxic chemicals was developed at the remand

---

[1] This remand evidence apparently was not considered by the circuit court in its final review.

hearing. The effort, obviously, was to strengthen claimant's case "* * * by presenting new evidence, which with due diligence could have been produced at the original hearing[s]."

Evidence developed at the various pre-remand hearings in connection with the claim of permanent total disability arising from compensable injury is summarized as follows:

Claimant, 55 at time of hearing, had been a longshoreman for the past 15 years. He had previously received a 57.2 degree disability award for a 1936 left knee injury. On December 26, 1969, claimant was operating a lift truck in the course of his employment as a longshoreman, unloading peas from a ship. The peas had been treated with chemicals identified as and labeled "Captan 75% — Dieldrin 3%," four ounces per 100 pounds. As the peas were moved on the lift truck, fine dust emanated from the sacks and was breathed by claimant. He at that time suffered a prolonged, uncontrollable coughing spell and at the suggestion of a fellow employe claimant left work before completing his shift. Claimant saw his treating physician December 31, 1969, and his problem was diagnosed as "acute toxic bronchitis with cough syncope and cardiopulmonary decompensation." Claimant worked a few days in February and in March 1970, and has not worked since because of knee problems, coughing spells and blackouts.

Claimant had a previous exposure to another chemical irritant in 1960 while loading wheat treated with Malathion. He was off work five or six months and lost his voice completely for eight or nine months. He stated that he was informed by a doctor that he was fully recovered from the Malathion.

One of the doctors who treated claimant for the 1960 Malathion exposure, Dr. Dubois, also testified about the December 26, 1969, chemical exposure. It was his opinion that there was no permanent effect from the Malathion. He had found a fibrosis of the lower lobe of the lung in 1962. He did not know its cause but claimant did have emphysema[®] at that time. On the basis of his prior knowledge and his examinations of claimant on August 19, 1970 and August 21, 1970, Dr. Dubois concluded that claimant's lung pathology was not secondary to toxic chemicals.

After the December 26, 1969, exposure claimant went to an osteopathic physician, Dr. Tepper, who referred him to Dr. Conley, an osteopathic physician specializing in internal medicine. Dr. Conley concluded that claimant suffered probable coronary arteriosclerosis with ischemic heart disease and a degree of chronic obstructive pulmonary disease associated with chronic pulmonary emphysema and interstitial fibrosis. He stated that determination of possible relationship of the pulmonary disease to claimant's exposure to toxic gases in his employment would require further bronchographical studies, a bronchoscopy and lung biopsy. He did not consider these studies necessary, but they could become warranted if the claimant continued to have signs of progressive dyspnea and cough, hemoptysis, or increased secretion. He did not do such studies.

There was medical evidence introduced from at least six doctors. Three of the doctors testified at the hearing. Most of the doctors also submitted one or more reports. One general practitioner osteopath, Dr. Burn-

---

[®] Claimant stated that he smoked cigarettes moderately from age 24 until the December 26, 1969, exposure. He stated he quit for a time after the 1960 Malathion exposure.

ham, thought that plaintiff's cardiopulmonary deficit was probably initiated by the Malathion exposure and permanently aggravated by the December 26, 1969, exposure. The other general practitioner osteopath could express no opinion on the permanent effects of the December 26, 1969, exposure. Dr. Dubois and Dr. Nudelman, both specialists in internal medicine, testified at the hearing to the effect that, based on their examinations of claimant and his history, they did not believe the single exposure on December 26, 1969, to the toxic chemical had permanent or residual effect on claimant's condition. Dr. Dubois believed that claimant's cough resulted from a chronic infection condition in the lungs which accompanies emphysema.

The hearing officer concluded in his August 3, 1971, opinion and order that claimant had failed to sustain the burden of proving a permanent disability from the exposure to fumes in his December 26, 1969, compensable injury. He acknowledged the toxic qualities of the fumes to which claimant was exposed but found the weight of medical opinion failed to establish a permanent disability resulting from this exposure and that the preponderance of the evidence established that claimant's difficulties derived from conditions of emphysema unrelated to the foregoing.

In our de novo review of this matter, which was overlong involved in hearing (a period of 16 months), we find ourselves in disagreement with the trial court's finding that claimant "did suffer permanent disability as a result of his industrial accident on December 26, 1969." Rather we agree with the hearing officer and the Workmen's Compensation Board that the evidence preponderates the other way.

Reversed and remanded.